STATE, RESPONDENT, v. BENNETT, APPELLANT.

(No. 4,613.)

(Submitted June 1, 1921. Decided June 20, 1921.)

[199 Pac. 276.]

*Criminal Law—Arson—Circumstantial Evidence—Sufficiency
—Motive—Stenographers — Evidence—New Trial — Newly
Discovered Evidence—Insufficient Affidavits.*

Arson—Evidence—Admissions—Stenographer's Notes—Portions Only Admitted—When not Reversible Error.
1.  Where, in a prosecution for arson, portions of the testimony of a stenographer given from notes taken in the county attorney's office relating to admissions made by defendant, were admitted in evidence over objection of defendant that all of it should be introduced, his counsel, after cross-examination of the witness at length, refused to have it all made a part of the record at the suggestion of the court and the county attorney, he was in no position to complain.

Same—Circumstantial Evidence—Sufficiency.
2.  In a prosecution for arson, evidence, circumstantial in character, which showed that defendant had insured the property in the building used for business and living purposes; had sent his family to the country a few days before the fire and removed several boxes of family belongings; was in the building a very short time before the fire was discovered in three different places where piles of excelsior and other inflammatory material had been prepared, *held* sufficient to justify conviction, under the rule that on circumstantial evidence conviction cannot be had unless all the circumstances are consistent with each other and with the hypothesis of guilt, and inconsistent with any other rational hypothesis.

Same—Motive—Direct Proof not Necessary.
3.  Motive for the commission of crime need not be proved directly by the prosecution, but may be inferred from attendant and surrounding circumstances, and from previous occurrences referring to and connected with the commission of the offense.

Same—New Trial—Newly Discovered Evidence—Affidavits—Insufficiency.
4.  Affidavits in support of a motion for new trial on the ground of newly discovered evidence will not be considered, where it is not shown that the matters therein contained were not discovered and known by defendant before the conclusion of the trial.

*Appeals from District Court, Musselshell County; George
P. Jones, Judge.*

1.  Stenographer's notes as evidence, see note in 81 Am. St. Rep. 358.

VAUGHN Q. BENNETT was convicted of arson, and from the judgment, and an order denying a new trial, he appeals. Affirmed.

*Messrs. Jeffries & McNaught,* for Appellant, submitted a brief; *Mr. G. J. Jeffries* argued the cause orally.

Prejudicial error was committed in admitting the testimony of the witness Hafner. The testimony of the witness Hafner consisted of excerpts read from a written statement, and it was error to permit any part of the said statement to be introduced in evidence. There is no testimony whatever to show that an accurate transcript was made of the conversation. It was not even contended by the state that the written statement was the complete conversation held at the county attorney's office. The questions propounded to Bennett were not included in the written statement at all. While defendant's counsel was permitted to interrogate the witness as to that part of the statement which was not introduced by the state, the damage had been done. The jury could not receive an impartial impression from a part of the conversation; if it were intended they should do so, and that their verdict should be based on all the evidence available, then in typewritten form and in the hands of the witness, why should counsel suppress a part of it? The admission of this evidence, introduced in the manner it was, we submit, was highly prejudicial to the defendant. "The conversation containing the admissions by accused, must be considered by the jury in its entirety." (16 C. J. 635.) "The admission, in a conversation or document, by the defendant, of a fact disadvantageous to himself, will not be received without receiving at the same time all such other parts of such conversation or document, whether emanating from himself or from another, as may tend to explain or qualify the part first given. The whole relevant context is in such case to be left to the jury, who are to say whether the facts asserted by the defendant in

his favor are true." (Sec. 688, Wharton's Criminal Evidence, p. 1416; see, also, 1 Greenleaf on Evidence, 218.)

The evidence wholly fails to support the verdict, in that the state has failed to show any motive for the commission of the crime and has failed to introduce evidence sufficient to prove to the mind of a reasonable man, beyond a reasonable doubt, that the defendant and no one else committed the crime. (*State* v. *Mullins*, 55 Mont. 95, 173 Pac. 788; *State* v. *Chevigny*, 48 Mont. 382, 138 Pac. 257; *State* v. *Sieff*, 54 Mont. 165, 168 Pac. 524; *Falk* v. *State*, 182 Ind. 317, 106 N. E. 354; *Dunn* v. *People*, 158 Ill. 58, 42 N. E. 47.)

*Mr. S. C. Ford,* Attorney General, and *Mr. Frank Woody,* Assistant Attorney General, for Respondent, submitted a brief; *Mr. L. A. Foot,* Assistant Attorney General, argued the cause orally.

Counsel argue that it was necessary for the state to introduce direct evidence for the purpose of proving motive. It was not incumbent upon the state to introduce direct evidence for this purpose (16 C. J. 529). Where the defendant is shown to be the criminal, motive is immaterial. (*Id.* 547.) And motive may be inferred from the facts in evidence, and the facts supplying the motive may be adduced in connection with other evidence in the case. (2 Wharton on Criminal Evidence, 1649.) On a charge of arson it is relevant to show that the accused insured the property, or that the securing of the insurance money was his motive. (*Id.* 1650.) And it is always relevant for the state to show a pecuniary motive on the part of the accused, and in support of this it may show that he held a policy of insurance on the building, or on goods in the building at the time of the fire. (*Id.* 1677.) Here the state introduced testimony showing the occupancy of the building by the defendant, that he had certain property therein, that he had insurance on such property, and evidence showing that the defendant burned the building. When this evidence was introduced it was sufficient to show

motive, without any direct evidence being introduced for solely such purpose.

MR. COMMISSIONER JACKSON prepared the opinion for the court.

Defendant, convicted of the crime of arson, appeals from the judgment and the order denying motion for a new trial.

On March 12, 1919, the defendant entered into a written lease, by the terms of which, on or about April 1, 1919, he went into possession of a two-room structure in the city of Roundup and built two additional rooms to the building, the back one of which was apparently a shed covering an ice-box. He used the place as a butcher-shop and dwelling. He insured the stock and household and shop furniture for one year in the sum of $1,000, on April 29, 1919, $250 of which was on meats and provisions, $500 on office and shop fixtures, and $250 on his household goods and personal effects. Some time in the following June he informed the insurance agent that he was going to discontinue selling merchandise during the hot weather, but would open up again. The agent did not cancel the policy, but informed defendant it had no force as far as the meats and provisions were concerned. About the 1st of June, 1919, defendant went to work in a pool-hall; his wife tending the business of selling out his remaining stock. He and his family continued to live on the premises until about August 3, when his family went to the country and the defendant continued to sleep at the house. On the 5th or 6th of August, he sent away from his house several boxes of family belongings and on the evening of August 9 arranged with one Brown to take him in an automobile to the country to visit with his wife and family. At midnight of that day he closed the pool-hall where he had been working, and some time thereafter, together with Brown, drove to his home, arriving there some time around 12:30. With respect to the hour of arrival there is some conflict between prior admissions made by the defendant and his testimony at the trial, but the jury

evidently fixed it at 12:30, or close thereto. At his home they entered the back door, Brown taking out a bicycle and defendant a grip, and as he was following Brown through to the back room, "thinking of some cigars he had," he went back to another room to get them. He then shut and locked the door, going to the car with Brown. They rode for a distance of ten blocks to what is known as the Morton shack, where they were joined by defendant's father. At about this time the fire-alarm sounded, and the defendant told Brown that every time he heard the fire whistle blow he felt as though something of his was on fire. Brown, the defendant, and his father went on to the Morton ranch in the country, and on the afternoon of August 10 defendant stated he first heard of the fire and returned with "the first party that came to town."

At about 12:45 A. M., approximately fifteen minutes after defendant had locked and left the building, it was burning in three different places—one fire being in a small closet in the rear of an unused range, another behind a gasoline stove in the same room, and the third in the second room from the front, under and behind a dresser. These fires were unquestionably of incendiary origin, piles of excelsior, sticks, *etc.*, being used, and had been burning about fifteen minutes when the fire chief arrived.

There is some sharp conflict in the record as to the value of the property in the building, but that was for the jury.

Defendant's actions on the night in question were put in [1] evidence by voluntary admissions made by him on two different occasions, when he was not in custody and no prosecution had been instituted. This evidence was given by several witnesses without objection, until the witness Kathryn Hafner, stenographer to the county attorney, was called. Over objection by defendant, she was permitted to refresh her memory as to admissions. made by the defendant from notes written by her at the time the admissions were made in the office of the county attorney.

Defendant's brief fails to set out the specifications of error relied on, except specification No. 1, which relates wholly to the overruling of the objection to the introduction of the evidence of the witness Hafner. His argument is based on the theory that but part of the conversation was related, when it all should have been submitted. The record shows that counsel for defendant cross-examined the witness at length from her memoranda; that the court and county attorney suggested it all be made a part of the record; and if all of the conversation was not testified to by the witness, defendant cannot complain, by reason of the refusal on the part of his counsel to place it all in the record. Defendant later took the stand, and in all material details corroborated the testimony of the three witnesses who had already told of his admissions. That the testimony of the witness Hafner was admissible cannot be questioned. (Sec. 8020, Rev. Codes; *Marron* v. *Great Northern Ry. Co.*, 46 Mont. 593, 129 Pac. 1055.)

There is nothing to show to what specifications 2, 3, 4 and 5 [2] refer, save the argument of the defendant, and from that it appears he complains of the insufficiency of the evidence, want of motive and newly discovered evidence. It is true the evidence is circumstantial, but it shows that defendant occupied the building; had insured the property therein; moved his family to the country shortly before the fire; sent away several boxes of personal belongings; was in the building within a very short time before the fire was discovered; when he left, the house was vacant and the doors were all locked except that of the shed; and that the fires were incendiary. He could not have visited those rooms as he did, and not have seen the prepared piles of excelsior and rubbish. "All the circumstances proved must be consistent with each other and with the hypothesis that the accused is guilty, and at the same time inconsistent with any other rational hypothesis." (*State* v. *Suitor*, 43 Mont. 31, Ann. Cas. 1912C, 230, 114 Pac. 116.)

Every circumstance points unerringly to the guilt of the defendant, and in our opinion the proof is inconsistent with any other rational hypothesis. The unexplained evidence of the state is sufficient to sustain the verdict and judgment, and as to whether or not the evidence of the defendant explained that of the state was a matter for the jury, which determined by its verdict that the defendant was guilty. It is not necessary [3] that the state directly prove a motive. (*State* v. *Lucey*, 24 Mont. 295, 61 Pac. 994; *State* v. *Suitor, supra*.) "Motive is an inferential fact, and may be inferred, not merely from attendant and surrounding circumstances, but, in conjunction with these, from all previous occurrences having reference to and connected with the commission of the offense." (8 R. C. L. 182; 16 C. J. 529; 2 Wharton on Criminal Evidence, 1649, 1650, 1677.)

To support the ground of newly discovered evidence, defendant filed five affidavits. There is nothing to show [4] that the matters contained therein were not discovered and not known by defendant and his counsel before the conclusion of the trial. Therefore they cannot be considered.

The state in its brief has urged the dismissal of the appeal on various technical grounds, which might have been sustained; but we prefer to treat the case on its merits. For the reasons herein stated, we recommend that the judgment and the order appealed from be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion, it is ordered that the judgment and order appealed from be affirmed.

*Affirmed.*

Rehearing denied September 6, 1921.